PRECEDENTIAL
UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-3621
_____

ASSOCIATION OF NEW JERSEY RIFLE AND PISTOL
CLUBS INC.,

Appellant

v.

PORT AUTHORITY OF NEW YORK AND NEW JERSEY,
and
SCOTT ERICKSON

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2-06-cv-00402)
District Judge:  Hon. Katharine S. Hayden
_____

Argued and Submitted May 31, 2013

Before:  JORDAN and VANASKIE, *Circuit Judges*, and

RAKOFF,[*] *District Judge*.

(Filed: September 13, 2013)

_____

OPINION OF THE COURT

_____

Richard E. Gardiner, Esq. - Argued
3925 Chain Bridge Road, Suite 403
Fairfax, VA. 22030
                    Counsel for Appellant

Thomas R. Brophy,  Esq. – Argued
 Port Authority of  New York & New Jersey
 One Path Plaza
Jersey City, NJ 07306
                    Counsel for Appellees

RAKOFF, *District Judge*.

Section 926A of Title 18 of the United States Code confers the following protection upon those who wish to engage in the interstate transportation of firearms:

> Notwithstanding any other provision of any law or any rule or regulation of a State or any political subdivision thereof, any person who is

_____

[*] The Honorable Jed S. Rakoff, District Judge for the United States District Court for the Southern District of New York, sitting by designation.

2

not otherwise prohibited by this chapter from transporting, shipping, or receiving a firearm shall be entitled to transport a firearm for any lawful purpose from any place where he may lawfully possess and carry such firearm to any other place where he may lawfully possess and carry such firearm if, during such transportation the firearm is unloaded, and neither the firearm nor any ammunition being transported is readily accessible or is directly accessible from the passenger compartment of such transporting vehicle: Provided, That in the case of a vehicle without a compartment separate from the driver's compartment the firearm or ammunition shall be contained in a locked container other than the glove compartment or console.

The provision amended a far more expansive entitlement to "transport an unloaded, not readily accessible firearm in interstate commerce," which was passed just two months earlier as part of the Firearms Owners' Protection Act. *See* Pub. L. No. 99–308, § 107(a), 100 Stat. 449 (May 19, 1986), *amended by* Pub. L. No. 99–360, § 1(a), 100 Stat. 766 (July 8, 1986). The question before us is whether section 926A, as amended, creates a right enforceable by the appellant, the Association of New Jersey Rifle and Pistol Clubs Inc. ("the Association"), pursuant to 42 U.S.C. § 1983.

The Association's cause of action seeks injunctive relief pursuant to 42 U.S.C. § 1983 that would enjoin the Port Authority of New York and New Jersey and Scott Erickson (collectively, the "Port Authority") from enforcing certain

New Jersey statutes, which prohibit possession of a firearm without a permit and possession of hollow-point ammunition,[1] against non-resident members of the Association "who are entitled to transport firearms through New Jersey pursuant to 18 U.S.C. § 926A." J.A. at 26-30. The Association seeks this relief because, it alleges, the Port Authority enforces these state gun laws in Newark Airport against non-resident members of the Association, who are thus "coerced and intimidated into taking one of two courses of action: (i) When traveling with firearms . . . they avoid Newark Airport and other Port Authority sites to avoid unlawful arrest and/or detention . . . even though they have a right . . . to travel unmolested through such locations with firearms; or (ii) . . . they refrain from possessing firearms when traveling through Newark Airport and other Port Authority sites . . . ." *Id.* at 29.[2]

---

[1] *See* N.J. Stat. Ann. § 2C:39–5(b) and N.J. Stat. Ann. § 2C:39–3(f).

[2] In a prior non-precedential decision, another panel of this Court reversed the District Court's dismissal of this case on standing grounds and directed the District Court to permit the Association to amend its complaint to allege facts sufficient to demonstrate standing. *See Revell v. Port Auth. of N.Y. and N.J.*, 321 F. App'x 113 (3d Cir. 2009). The Association did so by properly asserting the rights of its non-resident members. While the Concurring Opinion below references a second reported opinion in *Revell*, the panel in that case expressly declined to reach the question before us. *See Revell v. Port Auth. of N.Y. and N.J.*, 598 F.3d 128, 136 n.13 (3d Cir. 2010).

4

On August 20, 2012, the district court granted the Port Authority's motion for summary judgment, holding that section 926A does not create a right enforceable under section 1983. Because we hold that, in enacting the amended section 926A, Congress did not intend to confer the right upon the Association's non-resident members that the Association seeks to enforce in this case, we affirm.

Section 1983 imposes liability on anyone who, under color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. On its face, section 1983 provides a remedy for a violation of federal rights, privileges, or immunities, but "not merely a violation of federal law." *Blessing v. Freestone*, 520 U.S. 329, 341 (1997); *see also Gonzaga Univ. v. Doe*, 536 U.S. 273, 283–90 (2002). Determining whether a federal statute creates a federal right enforceable under section 1983 is a two-step process.

The first step is to determine whether the federal statute creates a federal right. To make this determination, three requirements must be met. "First, Congress must have intended that the provision in question benefit the plaintiff. Second, the plaintiff must demonstrate that the right assertedly protected by the statute is not so 'vague and amorphous' that its enforcement would strain judicial competence. Third, the statute must unambiguously impose a binding obligation on the States . . . [i.e., it] must be couched in mandatory, rather than precatory, terms." *Blessing*, 520 U.S. at 340–41 (internal citations omitted).

If all three requirements are met, a rebuttable presumption arises that the statute creates a right enforceable

under section 1983. In such circumstances, "[p]laintiffs suing under § 1983 do not have the burden of showing an intent to create a private remedy because § 1983 generally supplies a remedy for the vindication of rights secured by federal statutes." *Gonzaga Univ.*, 536 U.S. at 284. However, in the second step of the *Blessing* analysis, this presumption may be overcome if a defendant shows that Congress has either expressly or impliedly foreclosed the section 1983 remedy for that particular right. *Blessing*, 520 U.S. at 341. "Implied" foreclosure of a remedy -- the more elusive rebuttal to the presumption that a federal right has a remedy under section 1983 -- means that notwithstanding the fact that Congress created an individual right with a given statute, Congress also "creat[ed] a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983." *Id*.

In our view, plaintiff here has failed to satisfy even the first requirement of the first step of the process, i.e., that Congress intended that section 926A benefit this particular plaintiff. This is evident from the plain meaning of the statute. Although the unwieldy sentence that comprises section 926A is drafted in a roundabout way, on a careful reading its language is clear and unambiguous. It begins by establishing a clear positive entitlement: a person who meets its requirements "shall be entitled" to transport firearms in certain circumstances. *Cf. Gonzaga*, 536 U.S. at 287 (contrasting the rights-creating language of "no person . . . shall be . . . subjected" with language typical of spending clause statutes, e.g., "no funds shall be made available."). But the part of the sentence that immediately follows expressly conditions this entitlement as only being operative "<u>if</u>, during such transportation the firearm is unloaded, <u>and</u> neither the firearm nor any ammunition being transported is readily

accessible or is directly accessible from the <u>passenger compartment</u> of <u>such</u> <u>transporting</u> <u>vehicle</u>." 18 U.S.C. § 926A (emphasis supplied).

It is plain from the latter condition that the statute protects only transportation of a firearm in a vehicle, and requires that the firearm and ammunition be neither readily nor directly accessible from the passenger compartment of such vehicle. In particular, the word "such," in "such transporting vehicle," by definition refers back to earlier part(s) of the sentence, and the only parts it could possibly refer to are the parts referring to the transportation of a firearm or ammunition. The use of "such" therefore makes clear that the transportation the statute protects must occur in a "transporting vehicle."

Moreover, if there were any doubt about the statute's vehicular limitation, the final part of the sentence that follows -- the "Provided" clause -- again makes clear that only vehicular transportation is included in the statutory grant. It states: "*Provided*, That in the case of a <u>vehicle</u> without a compartment separate from the driver's compartment the firearm or ammunition shall be contained in a locked container other than the glove compartment or console." 18 U.S.C. § 926A (emphasis supplied). This clause, on its face, presupposes transportation of the firearm in a vehicle.

It follows from this plain meaning that an ambulatory plaintiff who intends to transit through Newark Airport is outside the coverage of the statute.[3] But it is precisely such

---

[3] We note that our reading of the statute is perfectly consistent with the view that the statute might protect travel

people whose alleged rights under section 926A the Association seeks here to vindicate.

Despite the plain meaning of the statute, the Association urges this Court to conclude that the "readily accessible" clause is "grammatically disconnected" from the rest of the statute and thus that the "operative entitlement" of the statute contemplates non-vehicular transportation of firearms. Aside from its violation of the most elementary rules of grammar and punctuation, this argument posits the absurdity that Congress intended  -- in a single sentence, no less -- to create two disjunctive categories, one cabined with all kinds of conditions and the other with none. Thus, on this reading, the Association argues that because the first clause of the sentence is divorced from the rest, its members should be able to walk through Newark airport with their firearms in, for example, their wheeled luggage or in holsters attached to their belts. To account for the remainder of the sentence, the Association argues that it simply provides limitations on the special case of firearms and ammunition that are transported by vehicle.

This otherwise grammatically strained disjunctive reading of the statute, the Association argues, avoids the sin of rendering "directly" redundant to "readily," since both

---

that occurs via aircraft or train—each of these modes of travel might be considered "vehicular." The relevant question is whether ambulatory travel (i.e., walking) through an airport terminal is also protected by the statute.

terms purportedly convey the same meaning.[4] Yet "readily" and "directly" are clearly not redundant adverbs, and reading them both as part of the same limitation upon the permissible accessibility of a firearm in a "transporting vehicle" offends no grammatical rule. On the contrary, reading "readily accessible" and "directly accessible" as both modifying the extent to which firearms and ammunition can be "accessible from the passenger compartment of such transporting vehicle" gives meaning to all of the statute's terms: a key requirement of any statutory construction. That is to say, reading them as part of the same continuous entitlement to transport firearms in vehicles (i.e., the guns and ammunition must be neither readily nor directly accessible from the passenger compartment of a vehicle) renders neither adverb superfluous, and permits the Court to make sense of the final clause "*such* transporting vehicle" without re-writing the statute to read "*a* transporting vehicle," as the Association's reading would in effect require.

---

[4] While the Concurring Opinion states that the Association's reading of the statute is not "untenable," we respectfully disagree. The critical word is "such" in "such transporting vehicle." "Such is properly used as an adjective when reference has previously been made to a category of persons or things." Bryan A. Garner, *A Dictionary of Modern Legal Usage*, 526-27 (1987). As noted, the only possible antecedent to which "such transporting vehicle" could refer is the transporting of a firearm mentioned in the main clause of the statute, from which it follows that both of the limiting conditions following the word "if" refer to vehicle transportation.

Furthermore, the Association's reading is unable to sensibly account for the "Provided" clause ("Provided, That in the case of a vehicle without a compartment . . ."). Under our straightforward reading, the proviso presumes, once more, that the protected transportation must be in a vehicle. But under the Association's reading, the proviso is entirely unnecessary, for while, e.g., storage of a firearm in a glove box would possibly evade the limitation that firearms not be "directly" accessible in a vehicle, storage in the glove box would already be prohibited by the supposedly freestanding limitation that the firearms cannot be "readily accessible." It is not credible that Congress would have added the entire "Provided" clause when, on the Association's reading, it was entirely unnecessary. *See Kungys v. United States*, 485 U.S. 758, 778 (1988) (plurality opinion by Scalia, J.) (noting the "cardinal rule of statutory interpretation that no provision should be construed to be entirely redundant").

And there is more, for even assuming, *arguendo*, some ambiguity in the wording of section 926A -- and we find none -- the legislative history strongly supports the view that the amended statute protects only vehicular transportation of firearms and ammunition. To be sure, the unusual circumstances attending the enactment of section 926A mean that the kind of legislative history to which we ordinarily accord the greatest weight, such as committee reports, is irrelevant here, since section 926A was the result of a last-minute amendment proposed on the floor of the Senate. *See* David T. Hardy, *The Firearm Owners' Protection Act: A Historical and Legal Perspective*, 17 Cumb. L. Rev. 585, 625, 677 (1987). Nevertheless, "its late origin has given us a legislative history adequate to address most issues." *Id.* at 678.

The present version of section 926A was intended to forge a compromise between those who supported the much broader version passed earlier and those who favored its total repeal. As Senator Kennedy noted when the current, final version of section 926A came to a vote in the Senate:

> I would just like to note that in the compromise reached on the interstate transportation portions of the bill, it is the clear intent of the Senate that State and local laws governing the transportation of firearms are only affected if— first, an individual is transporting a firearm that is not directly accessible from the passenger compartment of a vehicle. That means it cannot be in the glove compartment, under the seat, or otherwise within reach. The only exception to this is when a vehicle does not have a trunk or other compartment separate from the passenger area. The weapon must be contained in a locked container other than the glove compartment or console. Second, any ammunition being transported must be similarly secured.

132 Cong. Rec. 9607 (May 6, 1986). [5]

---

[5] In reviewing the legislative history of section 926A, it is crucial to distinguish which of the two versions of section 926A a given speaker or committee is describing. As noted above, the current section 926A narrowed a far more expansive version contained in the Firearm Owners' Protection Act. Statements describing the earlier version of section 926A reveal that the problem Congress initially

intended to remedy was that "[u]nder current law, such persons can be prosecuted under some State and local gun laws even where they are simply on a hunting trip, traveling to a sporting event, or moving." *See* 131 Cong. Rec. S18177-78 (July 9, 1985) (statement of Sen. Dole). Thus, in some statements made while considering the current version, some members, in passing, referred back to this earlier purpose. *See, e.g.*, 132 Cong. Rec. H4102-03 (Jun 24, 1986) (statement of Rep. Hughes) ("[T]he purpose which everyone supported was to allow travelers who lawfully possessed weapons to travel to hunting grounds in other States."). Such statements, which speak retrospectively about an earlier form of section 926A, do not bear upon the purpose of the current statute, which was intended as a compromise to address concerns about the expansiveness of the predecessor entitlement. The reason why the current language and the previous language of the statute were discussed at the same time was that, as part of a "horse trade" designed to prevent filibuster, the Senate first passed FOPA, including the "broader" predecessor of 926A, but immediately acted to amend 926A. *See generally* Hardy, *supra*, at 625. Unlike the statements quoted in the Concurring Opinion, *infra*, Senator Kennedy's statements on the floor of the Senate, excerpted in full above, reflect the narrowed, compromise version of 926A that is the current federal law. As the final pre-vote statement summarizing the nature of the compromise reached, Senator Kennedy's statement is entitled to particular weight. The broader statements of opponents of the compromise, by contrast, are, given this legislative history, largely irrelevant. Of similarly diminished utility are statements that appear in committee reports relating to still earlier versions of the Firearm Owners Protection Act, which had a long and tortured history in Congress, *see id.*, though

In light of the plain meaning of the statute, fully corroborated by the legislative history, we hold that section 926A benefits only those who wish to transport firearms in vehicles—and not, therefore, any of the kinds of "transportation" that, by necessity, would be involved should a person like those represented by the Association wish to transport a firearm by foot through an airport terminal or Port Authority site. Here, the Association seeks injunctive relief that would permit its nonresident members to travel "unmolested" through Port Authority sites such as airports. Self-evidently, such travel must occur outside a vehicle, and thus will, in every instance, bring the Association's members outside the particular class of persons to whom Congress intended to confer a right under section 926A. Consequently, the Association has no federal <u>right</u> to invoke and thus cannot avail itself of section 1983.

We are mindful that a divided panel of the Second Circuit -- in addressing the overall question of whether persons like those represented by the Association have a remedy under section 1983 for purported violations of section

---

we note that even committee reports regarding the most expansive draft versions of section 926A assume that the statute's protection would extend only to vehicular transportation. *See, e.g.*, S. Rep. No. 98-583, at 28 (1984) ("It is anticipated that the firearms being transported will be made inaccessible in a way consistent with the mode of transportation—in a trunk or locked glove compartment in vehicles which have such containers, or in a case or similar receptacle in vehicles which do not.") *and* S. Rep. No. 97-476, at 25 (1982).

926A -- reached the same result as we do, but for different reasons. *See Torraco v. Port Auth. of N.Y. & N.J.*, 615 F.3d 129 (2d Cir. 2010). The majority of that panel held that section 926A does not create an enforceable right because its terms are too vague and amorphous to satisfy the second *Blessing* factor. *See id.* at 139. In a concurrence (the reasoning of which was adopted by the District Court in our case), Judge Wesley disagreed that the statute was so vague and amorphous as to strain judicial competence, but nevertheless found that under the "second step" of the *Blessing* framework, Congress had impliedly foreclosed a section 1983 action under the statute insofar as it enacted section 926A against the background of the "remedial mechanisms" of direct appeal and collateral attack of criminal convictions. *Id.* at 150. Because, Judge Wesley reasoned, collateral attacks upon criminal convictions are subjected to particular procedures by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Congress has "impliedly" foreclosed a section 1983 remedy for violations of rights established by section 926A. Because, however, we find the first of the *Blessing* factors dispositive, and conclude that Congress did not intend the amended section 926A to benefit those who wish to transport firearms outside of vehicles, we need not reach the concerns that motivated our sister Circuit in *Torraco*.

For the foregoing reasons, we will affirm the judgment of the District Court.

AFFIRMED

*Assoc. of N.J. Rifle & Pistol Clubs, Inc. v. Port Authority of N.Y. & N.J.*, *et al.* (No. 12-3621)
JORDAN, *Circuit Judge*, concurring in the judgment.

My colleagues in the Majority have set forth a plausible reading of § 926A, but I am not as convinced as they are that the statute is clearly limited to vehicular travel. Here is the language again:

> Notwithstanding any other provision of any law or any rule or regulation of a State or any political subdivision thereof, any person who is not otherwise prohibited by this chapter from transporting, shipping, or receiving a firearm shall be entitled to transport a firearm for any lawful purpose from any place where he may lawfully possess and carry such firearm to any other place where he may lawfully possess and carry such firearm if, during such transportation the firearm is unloaded, and neither the firearm nor any ammunition being transported is readily accessible or is directly accessible from the passenger compartment of such transporting vehicle: *Provided*, That in the case of a vehicle without a compartment separate from the driver's compartment the firearm or ammunition shall be contained in a locked container other than the glove compartment or console.

18 U.S.C. § 926A.

1

Awkwardly worded though the statute may be, it can reasonably be construed as a comprehensive defense for people traveling with firearms. Of particular importance in this case, § 926A provides that the transported firearms must not be either "readily accessible" or "directly accessible from the passenger compartment of such transporting vehicle." *Id.* The disjunctive "or" can be read as providing two separate limitations on the transportation of a firearm. That view is supported by contrasting § 926A's current language with its prior version, which provided:

> Any person not prohibited by this chapter from transporting, shipping, or receiving a firearm shall be entitled to transport an unloaded, not readily accessible firearm in interstate commerce notwithstanding any provision of any legislation enacted, or any rule or regulation prescribed by any State or political subdivision thereof.

Pub. L. 99-308, 100 Stat. 449 (May 19, 1986). The "not readily accessible" requirement has remained in the current version, with the addition of the not "directly accessible" requirement when transporting a firearm in a passenger vehicle. That addition thus can be seen as reinforcing the conclusion that, while the words "directly accessible" do relate specifically to vehicular travel, the words "readily accessible" do not.[1]

---

[1] What the Majority calls the "Provided clause" – that is, the last sentence of the statute, which states: "*Provided*, That in the case of a vehicle without a compartment separate from the driver's compartment the firearm or ammunition

The Majority calls that reading of the statute "strained." (Maj. Op. at 8.) I disagree. There are grammatical difficulties with the statute, no matter how it is approached, but that does not make the broader reading untenable.[2] Indeed, the disjunctive clauses in § 926A are

---

shall be contained in a locked container other than the glove compartment or console," 18 U.S.C. § 926A – does not foreclose the broader reading noted here. That clause can be understood as merely an additional limitation if the transportation of a firearm occurs in a vehicle without a compartment separate from the driver's compartment.

[2] The Majority focuses on the word "such" in "such transporting vehicle" (Maj. Op. at 8 n.4,), saying that "such" is appropriately used only when there has been a previous reference to "a category of persons or things." (*Id.* (internal quotation marks omitted).) My colleagues therefore contend that "the only possible antecedent to which 'such transporting vehicle' could refer is the transporting of a firearm mentioned in the main clause of the statute." (*Id.*) But there is no antecedent category of persons or things in the statute. The word "vehicle" appears nowhere before the phrase "such transporting vehicle." That deficiency leads to at least two interpretive possibilities: (1) we insert the word "vehicle" into the statutory language before introducing "such transporting vehicle," the approach the Majority favors, or (2) we conclude that Congress failed to follow the proper rules of grammatical construction when using "such." Either is a possible reading of the statutory language, and the latter is no more strained than the former. Rather than wrestle with grammar, I believe, as discussed below, that we should focus on the one thing that is clear about § 926A: it does not permit § 1983 liability.

3

each introduced separately by the word "is" ("is readily accessible or is directly accessible from the passenger compartment"). The reading the Majority adopts – which ties "readily accessible" to the passenger compartment of a vehicle – would be more persuasive if the statute were phrased with a single copula, thus: "… neither the firearm nor any ammunition being transported is readily or directly accessible from the passenger compartment of such transporting vehicle." But that is not how Congress wrote the statute, and, despite my colleagues insistence to the contrary, their reading renders the words "directly accessible" superfluous.

Although there is legislative history supporting the Majority's narrow reading of the protection afforded by § 926A, there are other portions of the legislative history that support a broader reach for the statute.[3]   Given such

_____

[3] Certain parts of the legislative history cast the protection more broadly, speaking of "travel" generally, rather than specifically of vehicles. *See* 132 Cong. Rec. H4102-03 (Jun 24, 1986) (statement of Rep. Hughes) ("[T]he purpose which everyone supported was to allow travelers who lawfully possessed weapons to travel to hunting grounds in other States ... ."); *see also* 131 Cong. Rec. S9101-05 (July 9, 1985) (statement of Sen. Dole) (explaining that § 926A was necessary because, "[u]nder current law, such persons can be prosecuted under some State and local gun laws even where they are simply on a hunting trip, traveling to a sporting event, or moving"). The Majority attempts to discount that history as irrelevant because it pertains to the previous version of the statute. (Maj. Op. at 11 n.5.) Not so. The legislative history for § 926A indicates that its current

language and the previous language were discussed at the same time and, in fact, before the previous language became law, amendments had already been proposed. *See, e.g.*, 132 Cong. Rec. S5358-04 (May 6, 1986) (statement of Sen. Hatch) (explaining that amendments to the previous version of § 926A would not compromise its substance); 131 Cong. Rec. S9101-05 (July 9, 1985) (statement of Sen. Symms) (discussing proposed amendments to the previous version of § 926A, which had not yet been passed). Moreover, the legislative history the Majority leans on is from a single member of Congress, which is something we have traditionally been careful to eschew. *See In re Channel Home Ctrs., Inc.*, 989 F.2d 682, 685 n.2 (3d Cir. 1993) ("[W]e refuse to attribute so much significance to a single word uttered by a single member of Congress, even one in a position of particular authority with respect to the legislation in question."); *GTE Sylvania, Inc. v. Consumer Prod. Safety Comm'n*, 598 F.2d 790, 811 (3d Cir. 1979) ("It goes without saying that the views of a single member of Congress concerning the appropriate interpretation of a statutory provision passed some years earlier are not dispositive."). Therefore, instead of looking at the previous statutory language as its own piece of legislation, it is more appropriate in this particular case to view § 926A's legislative history as an amalgamation of the debates from both the current § 926A and its previous version. As the Majority notes, the congressional debates from as far back as 1984 discussed vehicular travel. (Maj. Op. at 11 n.5.) That, however, does nothing to add clarity to § 926A's meaning. It arguably does the opposite, because the more broadly worded version of § 926A was enacted after those 1984 debates. Given the subsequent legislative history I have noted here, it is certainly

conflicting history, resort to the legislative record is not particularly helpful. *Cf. Rust v. Sullivan*, 500 U.S. 173, 185

---

ambiguous whether Congress meant to limit § 926A, or whether it sought a broader application to planes, trains, and automobiles.

In fact, the Majority concedes that § 926A can cover travel by planes, trains, and automobiles. (Maj. Op. at 7 n.3.) That concession leads to a puzzlement: given the Majority's interpretation of § 926A, how does one get to the airport or train station, check one's luggage containing a firearm, but still come under the protection of § 926A? It may be easy to say, as the government did during oral argument, that travelling by plane is permissible, as long as the airport the traveler is departing from is within a state in which he is permitted to carry a firearm. But that hardly seems to be the purpose of the statute. For if that were the case, the statute would be of very limited utility, as air passengers were never likely to face prosecution by the states whose air space they traversed. The purpose of the statute seems more likely to be the protection of, for example, a traveler who lives in Easton, Pennsylvania, and wishes to go hunting in Montana. The closest place likely to offer a variety of flights is not in the traveler's home state, but is in New Jersey, at the Newark Liberty International Airport. Accepting the Majority's concession, but not its statutory interpretation, that traveler comes within § 926A's scope. But if the Majority's statutory interpretation is controlling, that traveler faces prosecution when attempting to make his trip, unless he has a carry permit in New Jersey. Despite the Majority's disclaimer, its interpretation of § 926A appears to effectively limit the statutory protection to travel by private vehicles.

& n.3 (1991) (eschewing reliance on legislative history that was conflicting and ambiguous).

What can be helpful is a consideration of how others have read the statutory text. The availability of a broader reading of the statute is apparent from the Second Circuit's competing opinions in *Torraco v. Port Authority of New York & New Jersey*, 615 F.3d 129 (2d Cir. 2010). The majority opinion in that case held that § 926A's language did not indicate a congressional intent to make the statute redressable under 42 U.S.C. § 1983. *Id.* at 139. The concurrence, by contrast, indicated that the statutory language could be read to evince such an intent but that the remedial scheme associated with § 926A was such that Congress had foreclosed recourse to § 1983 by implication. *Id.* at 152. Significantly, no one on the *Torraco* panel concluded that § 926A is limited to vehicular travel. One may take issue with the conclusions they reached (and they disagreed among themselves), but those judges were not indulging in an outlandish reading of the statute. Nor was the District Court whose reasoning we now have under review. That Court concluded, in keeping with the *Torraco* concurrence, that although § 926A's language could be read to permit a § 1983 action, Congress had impliedly foreclosed any such private remedy. The Court did not adopt an "only for vehicular travelers" view of § 926A.

In short, § 926A is not the plain and unambiguous statute that the Majority portrays, and it is not a stretch to think that it was meant to protect interstate travel by many

means, not just in private vehicles.[4]  Rather than dive into the difficulty of interpreting the scope of § 926A's coverage,

---

[4] *See supra* note 3.  I note that the interpretation the Majority proposes is difficult to reconcile with our previous decision in this very case.  *Revell v. Port Auth. of N.Y. & N.J.*, 598 F.3d 128, 137 (3d Cir. 2010).  Specifically, Revell was delayed in traveling from Salt Lake City, Utah, to Allentown, Pennsylvania, and was forced to stay overnight in a hotel in Newark, New Jersey.  *Id.* at 130-31.  Within his luggage, which he collected at Newark Airport after realizing he would have to stay overnight, was a firearm in a locked container, as well as hollow-point ammunition, also in a locked container. *Id.* at 131.  After returning to the airport the next day, he was arrested by the Port Authority for carrying a firearm without a license, in violation of New Jersey law.  *Id.*  He brought suit and sought redress under § 1983.  We held that he did not come within the ambit of § 926A's protection because he had his firearm and ammunition in his luggage, which accompanied him to his hotel room.  *Id.* at 139.  "Revell thus had access to his firearm and ammunition during his stay at the New Jersey hotel, whether or not he in fact accessed them and regardless of whether they were accessible while he was traveling by plane or van.  That crucial fact takes Revell outside the scope of § 926A's protection."  *Id.* at 137.  We thus concluded that it was the prolonged time Revell had with his luggage that brought him outside of § 926A's protection because he had ready access to his firearm.  Under the Majority's interpretation of § 926A, our decision in *Revell* should not have hinged upon Revell spending the night in his hotel with his suitcase; we should have concluded that, as soon as he was outside of an automobile, he was outside the

which is an unnecessary adventure at present, I would affirm the District Court's conclusion that § 926A simply does not support a claim for relief under § 1983.

As explained by the Majority, § 1983 provides a cause of action against anyone who, acting under color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Redress under § 1983 is limited, however, to a "violation of a federal right, not merely a violation of federal law," and courts must determine whether a federal statute confers a redressable federal "right." *Blessing v. Freestone*, 520 U.S. 329, 340 (1997) (emphasis omitted). Again as the Majority notes, the Supreme Court's decision in *Blessing* lays out three factors to consider when determining whether "[a] statute creates enforceable rights, privileges, or immunities within the meaning of § 1983." *Pa. Pharmacists Ass'n v. Houstoun*, 283 F.3d 531, 535 (3d Cir. 2002) (internal quotation marks omitted). First, "Congress must have intended that the provision in question benefit the plaintiff"; second "the plaintiff must demonstrate that the right assertedly protected by the statute is not so 'vague and amorphous' that its enforcement would strain judicial competence"; and third "the statute must unambiguously impose a binding obligation on the States ... [;] the provision giving rise to the asserted right must be couched in mandatory, rather than precatory, terms." *Blessing*, 520 U.S. at 340-41. In *Gonzaga University v. Doe*, the Supreme Court explained that a plaintiff cannot succeed just by falling within the general zone of interest that the statute is intended to protect. 536 U.S. 273, 283 (2002).

---

protection of § 926A. But that is not the interpretative route we took.

Rather, the statute must "unambiguously confer[] [a] right to support a cause of action brought under § 1983." *Id.* We have interpreted *Gonzaga* and *Blessing* to require, in addition to satisfaction of the three *Blessing* factors, that a statute contain "rights-creating language which clearly imparts an individual entitlement with an unmistakable focus on the benefitted class." *Grammer v. John J. Kane Reg'l Ctrs.-Glen Hazel*, 570 F.3d 520, 526 (3d Cir. 2009) (internal quotation marks omitted).

The paradigmatic examples of such language are found in Title VI of the Civil Rights Act of 1964, which states that "No person in the United States shall ... be subjected to discrimination under any program or activity receiving Federal financial assistance" on the basis of race, color, or national origin, 42 U.S.C. § 2000d, and Title IX of the Education Amendments of 1972, which states that "No person in the United States shall, on the basis of sex ... be subjected to discrimination under any education program or activity receiving Federal financial assistance," 20 U.S.C. § 1681(a). The inquiry into whether Congress intended to create a federal right redressable under § 1983 overlaps and is informed by the precedents on implied rights of action. *Gonzaga*, 536 U.S. at 284. For example, in *Gonzaga*, the Supreme Court examined the Family Educational Rights and Privacy Act of 1974 ("FERPA"), which states that "[n]o funds shall be made available" to any "educational agency or institution," which has a prohibited "policy or practice." 20 U.S.C. § 1232g(b)(1). The Court concluded that that language did not contain sufficient rights-creating language, *Gonzaga*, 536 U.S. at 287, and thus did not create rights enforceable under § 1983. *Id.* at 290.

I am unconvinced that § 926A contains the requisite "rights-creating language" to "clearly impart[] an individual entitlement with an unmistakable focus on the benefitted class." *Grammer*, 570 F.3d at 526.  While the statute does speak specifically of benefiting a person, s*ee* 18 U.S.C. § 926A (stating that "any person who is not otherwise prohibited by this chapter from transporting, shipping, or receiving a firearm shall be entitled" to transport that firearm), there is a crucial difference between the language of § 926A and the language used in Titles VI and IX.  Section 926A appears to be framed only as a legal defense to a state prosecution for illegal firearm possession.  Its location in the criminal code indicates that Congress did not intend to confer upon travelers a new federal cause of action, but wanted only to shield travelers from a certain variety of criminal liability.  It is noteworthy in this regard that in 18 U.S.C. § 925A, a statute under the same title and one section away from § 926A, Congress provided a specific civil remedy to people who are subject to the "erroneous denial of [a] firearm," saying, that such a person

> may bring an action against the State or political subdivision responsible for providing the erroneous information, or responsible for denying the transfer, or against the United States, as the case may be, for an order directing that the erroneous information be corrected or that the transfer be approved, as the case may be.

18 U.S.C. § 925A(2).  So, Congress knew how to be unambiguous about conferring new private rights of action in this field, when it wanted to grant them.

11

Moreover, the tremendous impracticality of subjecting local law enforcement officials to liability on the basis of § 926A militates against any conclusion that a redressable substantive right was intended by Congress. As we explained the last time this case was before us, threatening police officers with § 1983 liability would force them to "investigate the laws of the jurisdiction from which the traveler was traveling and the laws of the jurisdiction to which the traveler was going prior to making an arrest." *Revell v. Port Auth. of N.Y. & N.J.*, 598 F.3d 128, 137 n.15 (3d Cir. 2010) (internal quotation marks omitted). Without some clearer expression of congressional intent, I cannot conclude that § 926A was meant to impose on the police such a potentially burdensome requirement, with the risk of civil liability hanging over them. *Cf. Gonzaga*, 536 U.S. at 286 ("[W]here the text and structure of a statute provide no indication that Congress intends to create new individual rights, there is no basis for a private suit … under § 1983.").

Because Congress did not, in enacting § 926A, unambiguously confer upon travelers any right redressable under § 1983, I would affirm the decision of the District Court on that basis, and on that basis alone. I therefore concur in the judgment.